STAFFORD HIGGINS INDUSTRIES, INC., ET AL.
*v.* CITY OF NORWALK ET AL.
(5988)

STOUGHTON, NORCOTT and FOTI, Js.

Argued May 19—decision released August 30, 1988

*Bruce M. Perlman,* with whom were *Jay H. Sandak* and, on the brief, *Robert A. Slavitt,* for the appellants (plaintiffs).

*Sara L. Oley,* assistant corporation counsel, for the appellee (defendants).

NORCOTT, J. This case arises from an appeal to the Superior Court from a decision of the board of tax review of the city of Norwalk increasing the assessment on a building located at 25 Van Zant Street in that city. The plaintiffs are the owners of units of the 25 Van Zant Street condominium. The subject building was one of the first commercial condominium conversions in the state of Connecticut. The premises were converted from a multi-tenanted factory to an industrial condominium.

On February 14, 15, and 19, 1980, the defendant board of tax review reassessed the value of the condominium according to the defendant tax assessor's revaluation, even though a reassessment of the same premises had been done in 1973. The 1980 reassessment was done as a supplement to the 1979 grand list. The assessor's revaluation nearly quadrupled the property value of the condominium from the time of the 1973 valuation.

The plaintiffs appealed the board's actions affecting the 1979 tax list to the Superior Court. Thereafter, pursuant to General Statutes § 12-118,[1] the plaintiffs

[1] General Statutes § 12-118 provides: "APPEAL FROM BOARD OF TAX REVIEW. Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and

amended their appeal to include the subsequent tax list years 1980, 1981 and 1982. On November 18, 1982, the trial court granted a motion for summary judgment in favor of the plaintiffs as to the 1979 grand list only. The court held that certain defects in the notice given to the plaintiffs with respect to the 1979 list year mandated the granting of the summary judgment.

Pursuant to the court's memorandum of decision on the motion for summary judgment, the plaintiffs' counsel prepared a judgment file based on the trial court's decision. The memorandum of decision made no mention of an award of interest, but the judgment file prepared by plaintiffs' counsel and subsequently signed by the court, *Nigro, J.*, stated that the sums owed to the plaintiffs were to be "repaid with statutory interest."

Thereafter, on July 23, 1986, the parties executed a stipulation for judgment before the court, *Emmett, J.*,

the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

which was entered as a judgment on July 31, 1986. The stipulation provided for rebates of tax overpayments and postjudgment interest and pertained to the 1980, 1981 and 1982 list years only. The 1979 list year had been disposed of by virtue of the summary judgment. The parties fully complied with the stipulation.

The defendant contends that the stipulation between the parties dated July 31, 1986, fully covered and settled all matters contained within the plaintiffs' complaint, including the consideration of all interest. The plaintiffs argue that the stipulation was silent as to prejudgment interest for the 1979 list year, and that such silence was at variance with the judgment file of November 30, 1982, which the plaintiffs contend only could have referred to prejudgment interest.

On January 30, 1987, the trial court, *Ryan, J.*, summarily denied the plaintiffs' motion for execution seeking an order from the court permitting them to execute upon the summary judgment for prejudgment interest as to the 1979 list year. Specifically, the plaintiffs sought to execute the judgment in order to collect prejudgment interest on the tax overpayments from the date on which they paid the taxes until the date of the summary judgment. The plaintiffs contend that they should at least have been given the opportunity for a hearing on the ambiguity between the judgment file and the stipulation during consideration of their motion for execution, but were precluded from doing so by the trial court. The trial court's denial of the plaintiffs' motion for execution of judgment is the subject of the present appeal.

The trial court issued no written memorandum of decision for this court's review, but orally stated on the record the basis for its order. Neither party moved for an articulation of the court's decision. Under these circumstances, we limit our review to a determination of

whether, in light of the entire record before us, the trial court's decision was erroneous as a matter of law. Practice Book § 4061.

We first note that the court's grant of summary judgment was entered pursuant to General Statutes § 12-119[2] which provides for the reimbursement of the overpaid taxes in accordance with the judgment of the Superior Court. General Statutes § 12-119 also provides that the trial court may make a discretionary award of interest. In its memorandum of decision, the first trial court did not address the matter of interest, but "directed [the plaintiffs' counsel] to submit a form of judgment" which would conform to the court's memorandum. The judgment subsequently prepared by the plaintiffs' counsel, signed by the court, and dated November 30, 1982, specified that the tax overpayments be repaid to the plaintiffs "with statutory interest." No appeal was taken from that judgment.

---

[2] General Statutes § 12-119 provides: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

It is well established that the judgment file itself and not the court's memorandum of decision constitutes the record judgment. *Pepin* v. *Danbury,* 171 Conn. 74, 81, 368 A.2d 88 (1976); *Harris* v. *First National Bank & Trust Co.,* 139 Conn. 749, 752, 97 A.2d 260 (1953). A claimed discrepancy between the memorandum of decision and the judgment file is one of substance and should have been raised by an appeal from the judgment. *Ravizza* v. *Waldie,* 3 Conn. App. 491, 494, 490 A.2d 90 (1985). An instrument signed by a judge rendering a judgment is prima facie the judgment of the court, and is evidence of what the court has decided. 46 Am. Jur., Judgments § 70; see also Practice Book § 338. Accordingly, we find that the first trial court exercised its discretion and awarded the plaintiff interest on the judgment.

General Statutes § 52-598[3] provides that an execution may issue upon a judgment for money damages for up to twenty years from the date the judgment entered. In this case, there is no real dispute that the summary judgment rendered by the trial court was for money damages. From our review of the record,[4] how-

---

[3] General Statutes § 52-598 provides in pertinent part: "Execution or action upon judgment for money damages. (a) No execution to enforce a judgment for money damages rendered in any court of this state may be issued after the expiration of twenty years from the date the judgment was entered and no action based upon such a judgment may be instituted after the expiration of twenty-five years from the date the judgment was entered."

[4] At the hearing on the plaintiffs' motion for execution, the following colloquy took place between the court and the plaintiffs' counsel:

"Mr. Perlman: It's our Motion for Execution. Essentially this involved a tax appeal of an industrial condominium development in Norwalk that was reassessed in 1979, when it went condominium, and it involved subsequent years up through I believe the 1985 revaluation year. Judge Nigro, in 1982, granted a summary judgment as to the 1979 list year only, based on an issue of notice, stating a notice was insufficient.

"The Court: When did he do this? In 1980?

"Mr. Perlman: Yes, your Honor. We have—the parties subsequently stipulated before the Court as to the disposition of the 1980 and subsequent

ever, it is apparent that the trial court, while consider-
ing the plaintiffs' motion for execution on March 2,
1987, ruled that it would not allow interest on the judg-

years that were involved in this appeal, so that we could settle the case
in full. The defendant has paid the plaintiffs the principal amount of all
of the tax years and the interest based I think on the subsequent years.
The only issue that we are before the court today is on whether or not inter-
est should be paid on the 1979 list year from the dates of payment by the
taxpayers to the City running until the date that the City refunded those.
amounts back to the taxpayers pursuant to the reduction in assessment.
It's the Plaintiff's position, your Honor, that these assessments were not
reduced by stipulation, so in that sense it's a little different than the West-
port matter.

"The Court: Yes, but I don't want to go back to '82.

"Mr. Perlman: I'm not sure I understand your Honor.

"The Court: Well, this is something, if you moved for execution within
30 or 60 days of what happened, I may be interested. But, you're saying
now this is '82? This is something that happened back in 1982?

"Mr. Perlman: Yes, your Honor.

"The Court: And now you're coming into court, for me to start adding
interest to something that the Judgment in '82? I don't want to exercise
my discretion on that.

"Mr. Perlman: Your Honor, I would submit that I'm not sure whether
it's discretionary in 12-118. It says that any court ordered reduction shall
include interest on the overpayment.

"The Court: Well, somebody can take an appeal. This way I'm going to
be on both sides of the issue in the Appellate Division, and I'll be guaran-
teed to win one way or the other.

"Mr. Perlman: The point of the matter is that while Judge Nigro's par-
tial summary judgment was decided in 1982, the case wasn't resolved until
1986.

"The Court: Well, then maybe I misunderstood. In 1986 what happened?

"Mr. Perlman: In 1986, a stipulated judgment was entered into which
cleared up all the subsequent tax years; did not include the 1979 year which
had been disposed of by virtue of the partial summary judgment.

"The Court: Oh well, I maintain my position.

"Mr. Perlman: I just dug a hole out of which I just dug myself out of,
your Honor.

"The Court: I maintain my position. To give you interest, I don't know
whether I can.

"Ms. Senie: Can I speak?

"The Court: You may.

"Ms. Senie: The stipulations entered into in 1986 did indeed provide for
interest starting from the date of that judgment, that partial summary judg-
ment from November 18, 1982.

ment solely because it had been entered some five years earlier. This ruling was clearly erroneous because, as we noted above, execution could issue upon the judgment for up to twenty years. In refusing to execute upon the judgment because it considered the judgment stale, the trial court did not rule upon the questions of whether the stipulated judgment entered into by the parties covered the 1979 tax year or whether the summary judgment included prejudgment interest for the 1979 tax year. Accordingly, this case must be remanded for a resolution of those questions.

There is error, the decision of the trial court is set aside and the case is remanded for a rehearing on the plaintiffs' motion for execution.

In this opinion the other judges concurred.

---

"The Court: That's what I was just going to say.

"Ms. Senie: So, the stipulations provided for interest. So, we've dealt with it. And the partial summary judgment by Judge Nigro never dealt with it. So, it was dealt with in the stipulations in July of '86.

"The Court: What do you say to that? She says the stipulation in July of '86 included interest.

"Mr. Perlman: It included postjudgment interest, not prejudgment interest, which by virtue of the statute we can't waive. I'm not saying we're not inclined to waive it. But, the statute says 'shall.'

"Ms. Senie: The statute doesn't say when interest shall become due.

"The Court: I'll take the papers. But, I'll deny it. We have to straighten out what we've done in the others.

"Ms. Senie: I would urge you to deny it. The stipulation should govern. Otherwise we make a mockery of entering stipulations in court.

"The Court: I'll deny it without prejudice and see what's going on with that other one.

"Mr. Perlman: Thank you, your Honor.

"Ms. Senie: Thank you, your Honor."