### GLENN GORELICK ET AL. *v.* EMILY MONTANARO ET AL.

### MICHAEL MONTANARO *v.* GLENN GORELICK, TRUSTEE, ET AL.
### (AC 25485)

Lavery, C. J., and Schaller and Dupont, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued September 12, 2005—officially released February 28, 2006

*A. Reynolds Gordon*, with whom was *Frank A. DeNicola, Jr.*, for the appellant (named plaintiff in the first case, named defendant in the second case).

*James P. Blanchfield*, for the appellees (defendants in the first case, named plaintiff in the second case Michael Montanaro et al.).

*Carolyn R. Linsey*, for the appellee (named defendant in the first case, defendant in the second case Emily Montanaro).

*Opinion*

DUPONT, J. This is Glenn Gorelick's consolidated appeal from the judgments rendered in two actions after trial to the court.[1] He appeals from the judgments[2] as a plaintiff in one case and as a defendant in the other. In the first action, instituted in November, 1993, by Dennis Gorelick[3] and Glenn Gorelick, the amended complaint named Emily Montanaro, Michael Montanaro and Wendy Montanaro as defendants. That complaint included counts alleging wrongful withholding of funds, breach of contract, waste and mismanagement, and unfair trade practices,[4] and sought an accounting, money damages, specific performance of a partnership agreement dated July 31, 1979, the appointment of a receiver of rents and a distribution of partnership funds.[5] The second action involved in this appeal, filed

[1] In the two actions, the parties consist of five members of the same family, Glenn Gorelick, Dennis Gorelick, Emily Montanaro, Michael Montanaro and Wendy Montanaro. Glenn Gorelick is the sole appellant in both cases. He is the plaintiff in the first case, *Gorelick* v. *Montanaro*, and a defendant in the second case, *Montanaro* v. *Gorelick*. Emily Montanaro is a defendant in both cases.

[2] The judgments were rendered on March 22, 2004. The appellant appeals from them and the supplemental order of March 29, 2004, and the trial court's articulation of May 18, 2004. A discussion of the judgments rendered by the court is contained in part II.

[3] On February 19, 2003, Dennis Gorelick filed a bankruptcy petition, resulting in an automatic stay of the proceedings in the first action. On March 7, 2003, the United States Bankruptcy Court, Shiff, J., granted relief from the automatic stay so that the state action could proceed to a final decision, but required that no further action would be taken in that proceeding without an order of the Bankruptcy Court.

[4] The unfair trade practices claim subsequently was withdrawn.

[5] In support of their claims, the Gorelicks alleged that the Montanaros violated the partnership agreement because they (1) failed to distribute the Gorelicks' share of rental income, (2) failed to deposit the Gorelicks' share into an interest bearing account, (3) misappropriated partnership funds, (4) improperly paid management fees to Emily Montanaro and (5) transferred partnership interests in contravention of the partnership agreement. On October 29, 2001, the trial court ordered that all funds held in the partnership account, and all future partnership income, be held in an interest bearing account, except for ordinary and necessary partnership expenses. The partnership funds remain in an interest bearing account, awaiting distribution.

in December, 2001, by Michael Montanaro against Glenn Gorelick, trustee, Dennis Gorelick, trustee, and Emily Montanaro, sought a dissolution of the partnership or a partition by sale of the real estate known as 10 Boston Avenue in Bridgeport, "with a division of the proceeds pursuant to the [p]artnership agreement . . . ." In that action, the trial court found in favor of the plaintiff, Michael Montanaro, ordering a partition sale and a winding up of the partnership.

The issues raised by the sole appellant, Glenn Gorelick,[6] include whether the court (1) failed to decide the whole case, (2) improperly failed to find that Emily Montanaro breached her fiduciary duties, (3) improperly found that Glenn Gorelick had unclean hands, (4) improperly held that Glenn Gorelick lacked standing to sue Emily Montanaro for financial mismanagement and (5) improperly found that the lease of the partnership with Town Fair Tire Center of North Avenue, Inc. (Town Fair), imposed on the landlord the obligation to repair the premises at 10 Boston Avenue.[7] We do not reach the substantive issues raised by the appellant and instead dismiss the appeal for lack of a final judgment, as discussed hereinafter.

[6] Glenn Gorelick's interest in the real estate involved in both cases is as a trustee. His interest in the partnership assets is yet to be determined. His pleadings in both cases describe his status as an individual and as a trustee.

[7] Those issues, except for the fifth, relate to the first action. The only issue raised by the appellant that relates to the second action, which sought a dissolution of the partnership and partition by sale of the real estate, relates to his belief that "the trial court's order of an immediate auction sale was likely related to the [court's] erroneous conclusion that the landlords had the duty to repair the [premises of the lessee, Town Fair], thus leaving the instant parties exposed to potential uninsured losses . . . ." That premise is used by the appellant to claim that there was no need for a "fast track auction sale" because the landlord had no such duty to repair.

Expert opinion as to the value of the property was noted by the court. Although the court erroneously stated that the landlord was responsible for repairs, it was the lack of unity of the partners and the possibility of major depreciation by accident or neglect that prompted the court to order the "partition of the property by sale without undue delay."

## I
## BACKGROUND

In 1977, brothers Michael Montanaro and Richard Montanaro, their mother, Emily Montanaro, and their cousins, Dennis Gorelick and Glenn Gorelick, each were conveyed a one-fifth interest in a parcel of commercial property at 10 Boston Avenue by Emily Montanaro's mother, Ellen Berty.[8] At oral argument in this court, the parties agreed that Dennis Gorelick no longer had any interest in the real estate at the time the second action involved in this appeal was commenced and that Glenn Gorelick, as trustee, owns a 40 percent share of the realty, as reflected on the land records.[9] There is also no dispute among the parties that Michael Montanaro owns 20 percent and Emily Montanaro owns 40 percent of the real estate, as stated on the land records of Bridgeport.[10] In 1979, the original five landowners formed a partnership, known as Boston Avenue Proper-

[8] For reasons concerning creditors, Glenn Gorelick's interest was given in trust to Dennis Gorelick. The court stated that Richard Montanaro transferred his interest in trust to his mother, Emily Montanaro. The deed that was recorded on the land records, however, indicates that Richard Montanaro's interest was not transferred in trust to Emily Montanaro, but was transferred in fee on March 9, 1992.

[9] On May 28, 1993, Dennis Gorelick transferred the share of the realty that he previously had held as trustee for Glenn Gorelick to Glenn Gorelick, trustee for Kira Gorelick, Glenn Gorelick's daughter. Subsequently, Dennis Gorelick transferred his share to Dennis Gorelick, trustee for his daughters, Elizabeth and Margaret, and subsequently to Glenn Gorelick, trustee for Kira Gorelick.

[10] On April 19, 1995, Emily Montanaro temporarily transferred her interest in the real estate to her daughter-in-law, Wendy Montanaro. In count three of the Gorelicks' amended complaint, the Gorelicks assert that Wendy Montanaro did not offer to the partnership the interest she received from Emily Montanaro. The count also alleges that Emily Montanaro could not transfer any interest to Wendy Montanaro because Wendy Montanaro was a spouse, not a child or grandchild or parent, which was prohibited by the agreement. Glenn Gorelick, therefore, seeks to purchase in accordance with the agreement, for $17,600, the 40 percent share that was allegedly transferred. The court found that Emily Montanaro did not transfer her interest in the *partnership* to Wendy Montanaro, although she did convey her interest in the *real estate* to Wendy Montanaro. As a result, according to the court,

ties, to develop the property and to manage the income derived from the property. The partnership was governed by a partnership agreement.[11]

Problems between the partners began in the mid-1990s when Berty's health began to fail, and Emily Montanaro began to care for her and manage her financial affairs.[12] Emily Montanaro became aware that Dennis Gorelick, who, along with Glenn Gorelick, had managed

---

Glenn Gorelick had no right to purchase a partnership interest.

Wendy Montanaro subsequently conveyed her interest in the real estate back to Emily Montanaro on October 18, 1996.

[11] The partnership agreement provided that the partnership's assets consisted of each partner's interest in the subject property, although ownership of the property was not transferred to the partnership. Further, Berty was to be the managing agent for the property and was to receive all income derived from the property. The agreement also placed restrictions on transfers of partnership shares, except that any partner was entitled to transfer his interest to his or "her parent, child or grandchild (not to spouse), in which event, said successor shall thereupon be an equal co-partner and possess the same status, right[s] and liabilities as possessed by the co-partners herein set forth. Such change in partner and in the status of the partnership shall take effect immediately upon receipt of notice of divestment by partner and acceptance [of] the new partner by all of the remaining partners . . . ." The agreement also provided that "[t]his partnership may be terminated by the partners upon . . . (c) [t]he conveyance of real estate which is the subject of this agreement and the payment of all debts and distribution of all net profits, if any."

We are unaware of any Connecticut case that determines whether a partner's interest in a partnership can vary from the partner's separate interest in the real estate that is managed by the partnership. Here, the partnership agreement does not precisely answer the question, but it implies, because of the right of first refusal provisions, that one partner may acquire a greater interest in the partnership than his or her original one-fifth interest in the separate real estate or end up with a lesser interest. The official comment to the Uniform Partnership Act, § 502, and General Statutes § 34-347 both explain that a partner's transferable interest is deemed to be personal property, regardless of the nature of the underlying partnership assets. Given the framework of the partnership act, it would be anomalous if a person's separate realty interest dictated his or her interest in distinct personalty. In view of our conclusions in this case, however, it is not necessary for us to decide that issue.

[12] The court, in its memorandum of decision, stated that "there has not been a more acrimonious, less trusting or less cooperative partnership since the Axis of World War II."

Berty's affairs to that point, had been fraudulently misappropriating Berty's money. An action was filed by Emily Montanaro, as executrix of Berty's estate, in which judgment was rendered in 1996 against Dennis Gorelick for $147,712.06. Another action was filed, in March, 1998, by Emily Montanaro, as executrix, claiming that Dennis Gorelick fraudulently had conveyed assets and seeking to set aside those conveyances in order to collect the judgment she had obtained. See *Montanaro* v. *Gorelick*, 73 Conn. App. 319, 807 A.2d 1083 (2002).[13]

The actions that are the subject of the present appeal were consolidated and tried to the court, *D. Brennan, J.*, in three days in June, 2002. The court reserved decision after conclusion of all of the evidence and ordered posttrial briefs. Judge Brennan subsequently resigned prior to rendering a judgment. The parties stipulated to allow a successor judge, *Doherty, J.*, to render judgment on the basis of the transcript, exhibits, briefs and oral argument. In effect, the parties agreed to allow a different judge to decide the cases without the benefit of observing and hearing the testimony of witnesses.[14]

---

[13] That action failed because the statute of limitations had run.

[14] On September 28, 2005, we ordered the parties to file simultaneous supplemental briefs on the following issue: "When parties stipulate that a successor judge may render judgment in a case where the trial judge has died, resigned or become disabled, after having concluded a nonjury trial but before deciding the issues raised, does the successor judge have the power to decide the case, pursuant to General Statutes § 51-183f without specific compliance with the holding in *Stevens* v. *Hartford Accident & Indemnity Co.*, 29 Conn. App. 378, 615 A.2d 507 (1992)." Although our conclusion in this opinion requires that we dismiss the appeal, we discuss that issue because it raises a legal issue likely to arise in the event of further proceedings in the trial court and any future appeals in these consolidated cases. See *Zhang* v. *Omnipoint Communications Enterprises, Inc.*, 272 Conn. 627, 641, 866 A.2d 588 (2005). Neither party raised any issue as to the propriety or legality of the stipulation they filed in the trial court for a successor judge either at the trial level or on appeal. Briefs were ordered to comply with *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 99, 644 A.2d 325 (1994). The issue does not implicate jurisdiction because § 51-183f grants a successor judge the power to consider the case and is premised on the discretion of that successor to do so.

## II

## FINALITY OF JUDGMENTS

The appellant claims that the court failed to decide all of the issues raised in the first count of the *Gorelick*

The general rule is that a party is entitled to a decision on the facts by a judge who heard the matter, and a deprivation of that right may be a denial of due process. *Stevens* v. *Hartford Accident & Indemnity Co.*, supra, 29 Conn. App. 384. The due process concern, however, is not present when parties have stipulated to a decision by the successor judge, who will act on the basis of a review of the evidence that was before the original trial judge. See *Nahas* v. *Nahas*, 25 Conn. App. 595, 597 n.1, 595 A.2d 926 (1991).

General Statutes § 51-183f provides a limited exception to that rule. General Statutes § 51-183f provides in relevant part that "if any judge of the Superior Court is retired because of disability, dies or resigns during the pendency of any proceeding before him, any other judge of that court, upon application, shall have power to proceed therewith as if the subject matter had been originally brought before him." The rule does not provide authority for a successor judge to sign and to enter findings of fact and conclusions of law drafted by his or her predecessor. *Stevens* v. *Hartford Accident & Indemnity Co.*, supra, 29 Conn. App. 383–84.

In *Stevens*, this court addressed the proper procedures to be followed under § 51-183f in the event that a judge retires due to death, disability or resignation during the pendency of a trial to the court. Id., 386. *Stevens* interpreted § 51-183f as requiring that a successor judge take six specific steps when rendering a decision on the basis of the evidence that was before the original judge. Id. As both parties accurately point out in their supplemental briefs, the six steps in *Stevens* is a process necessary to protect the due process rights of the parties. See id., 385.

As a general rule, due process considerations require that a party in a case tried without a jury is entitled to a decision by the judge who heard the evidence. See 46 Am. Jur. 2d, Judges § 32 (1994). A successor judge ordinarily has the power to complete any acts left incomplete by a predecessor judge that do not require weighing and comparing evidence. Id., § 30. Courts have recognized three exceptions to a successor judge's general lack of authority to decide a civil case on evidence heard by a predecessor judge. The first exception arises when a successor judge is granted such authority under the provisions of a statute, such as § 51-183f. 84 A.L.R.5th 399, § 19 (2000).

The second exception surfaces when it is unnecessary to make credibility determinations with respect to the testimony of witnesses or when credibility determinations are not involved. *Welsh* v. *Brown-Graves Lumber Co.*, 58 Ohio App. 2d 49, 52, 389 N.E.2d 514 (1978); see generally *In re Potter Instrument Co.*, 15 B.R. 202 (Bankr. E.D.N.Y. 1981); *Bradford* v. *Foundation & Marine Construction Co.*, 182 So. 2d 447 (Fla. App.), cert. denied, 188 So. 2d 821 (Fla. 1966); *Lakengren Property Owners Assn., Inc.* v. *Steven-*

v. *Montanaro* (*Gorelick*) action. That issue is tantamount to raising a jurisdictional claim and, therefore, presents a question of law for which our review is plenary. If the court did not dispose of all of the issues raised,[15] jurisdiction would, in the usual case, be lacking,

*son*, 1981 WL 2944 (Ohio App. 1981); *Cram* v. *Bach*, 1 Wis. 2d 378, 83 N.W.2d 877 (1957). A reading of the court's memorandum of decision reveals that the present case does not implicate the second exception.

A split exists among jurisdictions whether to recognize the final exception. A number of jurisdictions have held that the right to a decision by a judge who heard the evidence may be waived in any circumstance. There are limited jurisdictions, however, that have held to the contrary when the case hinges on issues of credibility; *Moore Golf, Inc.* v. *Lakeover Golf & Country Club, Inc.*, 49 App. Div. 2d 583, 583–84, 370 N.Y.S.2d 156 (1975); or the stipulation is contrary to public policy; *Welsh* v. *Brown-Graves Lumber Co.*, supra, 58 Ohio App. 2d 52. Although *Stevens* addressed the power of a successor judge to make his or her findings of fact based solely on transcribed testimony and exhibits, no Connecticut court has, to our knowledge, defined the power of litigants to stipulate to such a procedure, thereby circumventing the procedures required under § 51-183f. Although ordinarily stipulations of the parties are adopted, the court may disapprove the parties' agreement when it finds reason. See *Peiter* v. *Degenring*, 136 Conn. 331, 337–38, 71 A.2d 87 (1949); *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co.*, 136 Conn. 234, 236–37, 70 A.2d 126 (1949). A stipulation, however, is not necessarily binding on the court and, under the circumstances of a particular case, the court may be justified in disregarding it. *Kanopka* v. *Kanopka*, 113 Conn. 30, 39, 154 A. 144 (1931); see also *Bochicchio* v. *Petrocelli*, 126 Conn. 336, 340, 11 A.2d 356 (1940). That follows from the fact that a judge is not a mere umpire in a forensic encounter, but a minister of justice. *Felix* v. *Hall-Brooke Sanitarium*, 140 Conn. 496, 501, 101 A.2d 500 (1953).

We note that several of the claims raised in the consolidated cases implicate issues of credibility on their face. Furthermore, the court observed that the consolidated cases involved "critical testimonial evidence from key witnesses . . . the invocation of the 'clean hands' doctrine and numerous other allegations and testimonial evidence involving lack of veracity and impeachment of credibility, none of which was offered in the presence of the trier of the facts." Because we lack subject matter jurisdiction, we are without the power to resolve the question of whether stipulations of the parties can, as a matter of law, circumvent the procedures required by § 51-183f, as provided in *Stevens*, when the case hinges on questions of credibility.

[15] Although the appellant raises a jurisdictional issue as to the first count only, we must also consider the jurisdictional question of whether all of the claims of his other counts were decided. See *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983).

and the appeal would be dismissed without reaching the merits of the dispute. "[O]ur jurisdiction over appeals . . . is prescribed by statute [and] we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005). The appellant primarily claims that the court did not determine the quantifiable shares of the distributable income to which the parties are entitled and did not distribute such income in *Gorelick*. Because we conclude that the successor court failed to address the question of quantifiable shares in *Gorelick* and explicitly reserved that decision for a later date in *Montanaro* v. *Gorelick* (*Montanaro*),[16] we agree and dismiss the appeal for lack of a final judgment.

The subject matter jurisdiction of this court and our Supreme Court is limited by statute to final judgments. General Statutes § 52-263;[17] see generally W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2005 Ed.) § 61-1; see also C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.1 et seq. Our appellate courts lack jurisdiction to hear an appeal that is not brought from a final judgment. General Statutes § 52-263; see *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566

---

[16] We must also determine whether jurisdiction exists in *Montanaro*, in which the plaintiff, Michael Montanaro, sought both a dissolution of the partnership and partition by sale.

[17] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

(1983).[18] "The lack of a final judgment is a jurisdictional defect that mandates dismissal." *Lord* v. *Mansfield*, 50 Conn. App. 21, 25, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). The final judgment requirement is grounded in considerations of judicial economy, specifically, a policy discouraging piecemeal litigation that wastes valuable judicial time and resources. See *State* v. *Curcio*, supra, 30. If parties were allowed to file an immediate appeal from any trial court ruling made prior to the conclusion of the case, the appellate courts might waste time deciding appeals from earlier rulings when the eventual outcome in the trial court might well favor the party who was aggrieved by, and sought review of, the earlier ruling. In addition, allowing piecemeal appeals results in fragmented litigation in the trial courts.

Here, two cases were consolidated for trial. The second case, *Montanaro*, sought partition by sale and a dissolution of partnership. The first case, *Gorelick*, almost entirely concerned the partnership, but did not seek its dissolution. On appeal, all of the appellant's claims, except the claim that the immediate sale of the realty was not warranted on the facts, concern the causes of action related to the partnership. The two cases, thus, are intertwined to a certain extent. We begin our discussion by determining what the judgment files in each case provided. We must review the judgment files and the memorandum of decision in order to decide the import of the court's judgments, namely, whether the court determined all of the issues presented.

Practice Book § 6-3 provides: "(a) Judgment files in civil . . . cases shall be prepared when: (1) an appeal

---

[18] There is an exception for situations of great public importance. Our Supreme Court has construed General Statutes § 52-265a as allowing the chief justice or chief judge to certify an appeal in such situations, even if the order for which review is sought is not a final judgment. *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678 n.1, 485 A.2d 1272 (1984).

is taken . . . (b) [u]nless otherwise ordered by the judicial authority, the judgment file . . . shall be prepared . . . in all other cases, in the clerk's discretion, by counsel or the clerk. . . ." The judgment file is a record of the decision of the court. *Stafford Higgins Industries, Inc.* v. *Norwalk*, 15 Conn. App. 752, 757, 546 A.2d 340 (1988). If there is a discrepancy between the judgment file, as signed by the court and the memorandum of decision, the former prevails. Id. The judgment file, however, is a clerical document, which, even if missing, does not prevent a judgment from having been rendered. *Lehto* v. *Sproul*, 9 Conn. App. 441, 445, 519 A.2d 1214 (1987). The issues of an appeal may be considered even if there is no judgment file. *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 274, 471 A.2d 638 (1984). In this case, there were judgment files prepared by the trial court clerk that we next review.

The judgment file in *Gorelick* recites that the action sought "disbursement of partnership funds, appointment of a receiver, monetary damages and other relief." It then states: "The court, having heard the parties, finds that the request to appoint a receiver to wind up the partnership affairs should be and the same is granted. Whereupon it is adjudged that a receiver shall be appointed to wind up the partnership."[19] Thus, there is no mention of the claims for relief of an accounting, a distribution of partnership funds, money damages for the alleged waste and mismanagement or specific performance of the partnership agreement to allow the appellant to purchase the interest in the partnership that Emily Montanaro allegedly transferred in derogation of the partnership agreement.

The complaint in *Gorelick* requested the appointment of a "temporary and permanent receiver . . . to

[19] It is the amended complaint in *Montanaro* that sought a dissolution of the partnership and a division of proceeds pursuant to the partnership agreement, rather than the complaint in *Gorelick*.

receive and [disburse] rents and negotiate the lease with [Town Fair or a new tenant] subject to court approval." As explained in its articulation on May 13, 2005, the court denied that request while it granted the request to appoint a receiver to wind up the partnership affairs and to propose to the court a plan of distribution of partnership funds. The court in essence ordered a dissolution of the partnership when it stated in its memorandum of decision that the "partnership has long outlived the purposes for which it was created and to continue its existence would be to perpetuate the divisiveness, acrimony and mistrust which brought the parties to where they are today."

The judgment file in *Montanaro* recites that the action, as pleaded in the amended complaint, claims "dissolution of partnership and a partition or sale of 10 Boston Avenue, Bridgeport, Connecticut." It then states: "The court, having heard the parties, finds that a judgment of partition should be and the same is entered. Whereupon it is adjudged that a committee is to be appointed to conduct the sale by public auction." The judgment file also reflects the fact that Judge Doherty issued supplemental orders on March 29 and May 20, 2004, relating to the particulars of the partition sale of the real estate. Although the judgment file did not specifically include the court's judgment as to the dissolution of the partnership, we conclude that the court's memorandum clearly ordered a dissolution of the partnership.[20] Furthermore, we conclude that there is noth-

---

[20] Paragraph eleven of the partnership agreement provides that if the real estate that is managed by the partnership is conveyed by sale, the partnership is terminated. Upon the ordered sale of the property, the partnership would, thus, be dissolved.

We are aware that in the judgment file in *Gorelick*, the relief sought in *Montanaro* was granted as to the dissolution of the partnership. In view of our conclusion that the appeal should be dismissed for lack of a final judgment in both cases, it would be premature to order a correction of either judgment file because it is not yet known what the final judgments will be.

ing in the judgment file that contradicts the memorandum of decision, as we will discuss. We now review the memorandum of decision to determine if the court decided all of the counts in the complaint and, therefore, whether jurisdiction exists for our review.

We do not, for the purpose of our review of the memorandum of decision, nor need we, rule on the rectitude of those issues decided by the court, particularly those resting on the credibility of the parties. It is whether the court decided all of the issues necessary to establish jurisdiction, not whether it decided them correctly, to which we now give our attention.

We first consider what the court explicitly decided. In *Gorelick*, the court found that Glenn Gorelick and Dennis Gorelick had not validly transferred their partnership shares to themselves as trustees because such transfers were in contravention of paragraph 4a of the partnership agreement. Furthermore, the court found that Emily Montanaro's transfer of her interest in the property to her daughter-in-law did not violate paragraph 4c[21] of the partnership agreement because it was realty, rather than a partnership interest, that was conveyed. According to the court, Dennis Gorelick and Glenn Gorelick lacked standing to bring suit as "shareholders" in the partnership because, at the time of trial, they held partnership interests as trustees and not in their individual capacities.[22] The court observed, how-

---

[21] Paragraph 4c requires that transfers of partnership interest "shall take effect immediately upon receipt of notice of divestment of the partner and acceptance by the new partner by all of the remaining partners . . . ."

The court noted that although there was evidence of intent to divest, there was no evidence of acceptance of new partners.

[22] Shareholder is a term of art, referring to one who owns or holds a share or shares in a corporation. Black's Law Dictionary (7th Ed. 1999). Reading that term in the context used by the successor trial judge, we interpret the term shareholders to mean the Gorelicks' status as partners in their individual capacities. The Gorelicks brought suit as both individuals and as trustees. Without standing as individuals in the partnership, jurisdiction would be lacking for claims brought as individuals. The court, however, did not determine that the Gorelicks had no standing at all.

ever, that Dennis Gorelick and Glenn Gorelick offered no evidence of their divestment as individual partners, nor of their acceptance as trustees of partnership interests, as required by the written partnership agreement. The court then, contrary to its explicit finding that the Gorelicks lacked standing as "shareholders," concluded that they failed to meet their burden of proof as to the allegations that Emily Montanaro either wrongfully withheld partnership funds or committed waste or mismanagement.[23] That statement cannot be construed as an alternative conclusion of law because if standing is lacking, the court would be without jurisdiction to consider the Gorelicks' claims as individuals. The Gorelicks' claims as trustees, however, would fail under that finding.

Addressing the relief requested by the Gorelicks, the court concluded that an appointment of a receiver of rents and an accounting were unrealistic given the state of the partnership, which the court found had outlived its purpose and that "to continue [the partnership's] existence would be to perpetuate the divisiveness, acrimony and mistrust which brought the parties to where they are today."

In *Montanaro*, the court ordered the appointment of a receiver to wind up the partnership and to propose a plan for distribution of the partnership funds. In addition, the court rendered judgment of partition by sale of the subject property in *Montanaro*.[24]

---

[23] Specifically, the court found that all members attempted to reach an agreement as to the appropriate method to distribute the accumulated partnership funds, but a consensus was never reached that would authorize Emily Montanaro to make a disbursement. The court further found that the Gorelicks had failed to establish that the management fees received by Emily Montanaro, although not approved by a majority of members, resulted in damages. Finally, the court found that the minutes from partnership meetings demonstrated that the payment of Berty's funeral expenses was authorized by a majority vote.

[24] On March 29, 2004, the court issued supplemental orders establishing the fair market value of the property, appointing attorney Robert F. Frankel as the committee and setting the auction date and time.

Under Practice Book § 61-3, "[a] judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . *brought by or against a particular party or parties.* . . ."[25] (Emphasis added.) With respect to *Gorelick*, the court, as previously discussed, found in favor of the defendant Montanaros on counts two, three and four. Those counts included claims of waste and mismanagement, breach of contract and receivership.[26] In addition to those findings, the court, as previously noted, denied the Gorelicks' requests for relief in the form of money damages, an appointment of a receiver of rent and an accounting. It is clear that the court rendered judgment with regard to those portions of the complaint.

The remaining question concerns whether the court rendered judgment in count one of *Gorelick*. In count one, the Gorelicks alleged that the Montanaros wrongfully had withheld partnership funds and sought a determination of the percentage of funds to which each partner was entitled and a distribution of the funds due to them, as well as any interest resulting from the alleged wrongful withholding. The court found in favor of the Montanaros on the allegation of wrongful withholding of partnership funds, implicitly denying any claim for interest resulting from wrongful withholding.[27]

[25] Given the fact of consolidation, we necessarily conclude that if the judgments in both actions dispose of all causes of action, regardless of whether the court specifically separated them by citing to each case in its single memorandum of decision, then a final judgment exists.

[26] The appellant's brief claims that Emily Montanaro's duties as executrix of Berty's estate and as managing partner of the partnership created a conflict of interest. That claim, however, was not alleged in the appellant's complaint, and we do not consider it.

[27] Specifically, the court found that there were numerous attempts by the partners to reach an agreement regarding distribution of the accumulated funds, but no consensus was reached that would authorize Emily Montanaro to make a disbursement. In other words, though the accumulated funds were withheld, the withholding of funds was not wrongful. The court did not explicitly determine what interest, if any, the Gorelicks' possessed in the accumulated partnership funds.

The court, however, failed to determine explicitly the percentage of the funds to which each of the individual partners was entitled, as requested in the *Gorelick* complaint. Instead, the court addressed the claims in the *Montanaro* action.[28] In doing so, the court ordered an appointment of a receiver to wind up the partnership and to propose a plan for distribution of partnership funds, leaving the determination of the partners' respective interests in the accumulated funds and distribution of such funds for a future date.

"The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Brewer* v. *Gutierrez*, 42 Conn. App. 421, 423–24, 681 A.2d 345 (1996). An implication is defined as an inference of something not directly declared, but arising from what is admitted or expressed. Black's Law Dictionary (7th Ed. 1999). It is used where the intention in regard to the subject matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances, the general language or the conduct of the parties. Id.

As stated in the partnership agreement, the original five partners each owned an equal one-fifth interest in the partnership. Richard Montanaro conveyed his share of the real estate in March, 1992, after the partnership agreement was signed. All of the parties agree that

[28] See footnote 25.

Richard Montanaro validly transferred his interest in the real estate and the partnership to his mother, Emily Montanaro. None of the parties ever claimed that either transfer was in derogation of the partnership agreement. The court was aware that Richard Montanaro was not a party to either action and, impliedly, was not a partner involved with the court's judgment of dissolution of the partnership. The court explicitly found that Emily Montanaro's conveyance of her interest in the real estate to Wendy Montanaro was not a conveyance of her interest in the partnership. As such, the court implicitly found that Emily Montanaro holds a 40 percent partnership interest. Nevertheless, the court never determined who owned the 40 percent partnership interest, originally held by members of the Gorelick family, and in what capacity they now hold that interest.[29]

"A judgment that disposes of only a part of a complaint is not a final judgment." *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 246, 811 A.2d 1272 (2002). Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a

---

[29] Although the court stated that neither Gorelick had standing to bring suit as a "shareholder" because of a failure to comply with the partnership agreement, the court stopped short of determining who held the original Gorelick shares and in what capacity. The court, furthermore, explicitly left the determination of the distributive shares and a distribution of the liquidated partnership assets for a later date, namely, after the winding up of the partnership. We cannot conclude that there was an implied judgment, particularly when the court expressed an intention to reach the issue at a later date.

We note that had the court determined that the shares would remain as originally held, which would result in partnership interests that vary from the interests in realty. See footnote 11. In the case of Dennis Gorelick, continued ownership of a partnership interest would have an impact on the bankruptcy petition he filed in February, 2003, which remains pending.

particular party or parties; see Practice Book § 61-3; or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. See Practice Book § 61-4 (a). Neither exception applies to the present appeal.

First, as already discussed, the judgment of the court did not dispose of all causes of action brought by the parties. Specifically, in both cases, the claims for a determination of the respective parties' interests in the partnership and a distribution of accumulated partnership funds and assets has not been addressed by the court. Second, neither the trial court nor this court made any written determination pursuant to Practice Book § 61-4 (a) regarding the significance of the issues presented in this case. Accordingly, this appeal does not fall within the ambit of either rule permitting an appeal from a judgment on less than all counts in both complaints.

That conclusion, however, does not end our inquiry as to whether the judgments of the trial court are immediately appealable. See *State* v. *Curcio*, supra, 191 Conn. 30–31. An otherwise interlocutory ruling can be immediately appealed in two circumstances: (1) where the order terminates a separate and distinct proceeding; or (2) where the order so concludes the rights of the parties that further proceedings cannot affect them. Id., 31. In the present case, neither prong of the *Curcio* test is satisfied.

First, we address whether the judgments rendered by the court on the two complaints were of such a nature that they terminated a separate and distinct proceeding. "The 'separate and distinct' requirement of *Curcio* demands that the proceeding which spawned the appeal be independent of the main action." *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984).

The present appeal, on its face, does not implicate the "separate and distinct" prong. The issues that the sole appellant raises relate to both complaints in which the trial court has not rendered a final judgment, as previously discussed.[30]

We next consider whether the order of the court so concluded the rights of the parties that further proceedings cannot affect them. "In applying this prong of the *Curcio* test, our focus is on whether appellate review is necessary [in order] to prevent the irreparable loss of a cognizable legal right." (Internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford,* supra, 262 Conn. 247. "An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." Id. Here, we observe no risk of loss of any cognizable right if appellate review is delayed until final judgments enter. When there has been an adjudication of the individual partners' interests and an order of distribution of the partnership assets, the parties will have the appellate opportunity to challenge all of the trial court's findings of fact and conclusions of law.[31] That course to appellate review is consistent with the well established policy behind the final judgment rule, which is to avoid piecemeal appeals.

The appeal is dismissed for lack of a final judgment.

In this opinion the other judges concurred.

[30] The relief in *Montanaro* of a partition by sale of the real estate cannot be divorced from the relief sought in that case of a dissolution of the partnership. The distributive partnership shares were not determined by the court, and the court did not determine whether a partner's interest in a partnership can vary from the partner's interest in the real estate when that real estate is the only asset managed by the partnership. See footnote 11. The partial judgment of partition by sale, thus, does not terminate a separate and distinct proceeding.

[31] We are aware that our duty to follow established principles for the determination of whether jurisdiction exists makes it unfortunately necessary to prolong the dispute of the parties.