JOHN D. STEVENS *v* . THE HARTFORD ACCIDENT AND INDEMNITY COMPANY
(10981)

LANDAU, HEIMAN and FREEDMAN, Js.

Argued September 24—decision released November 3, 1992

*Charles J. Goddard,* for the appellant (plaintiff).
*Philip F. von Kuhn,* for the appellee (defendant).

FREEDMAN, J. This appeal arises out of a case that had not been concluded before the trial judge died. A successor judge then issued a decision. Because we conclude that the method by which the successor judge reached his decision was not proper, we reverse the judgment of the trial court and remand the case for further proceedings.

This case involves a request to compel arbitration. The plaintiff claimed that he was a resident in his father's household and therefore had standing to compel arbitration on the uninsured motorist portion of an insurance policy held by his father.[1] The defendant insurance company disputed this issue. An evidentiary hearing was held before Judge James D. O'Connor on October 3 and 4, 1990, and Judge O'Connor took the matter under advisement. Judge O'Connor died without having issued his decision in this case. Shortly after Judge O'Connor's death, Judge Arnold W. Aronson rendered judgment on November 22, 1991, based on an unsigned, handwritten document that was found among Judge O'Connor's papers. Judge Aronson issued the following memorandum of decision:

"The court finds that in the months preceding November 27, 1990 and particularly June 8, 1986, the plaintiff by his own testimony lived at the residence of friends, at the residence of a girlfriend, in tents when taking excursions on a motorcycle, and also on occasion, in the basement of his parents' home.

"It was also the testimony of the plaintiff that any living accommodations afforded the plaintiff by his father [were] temporary.

---

[1] Although the plaintiff claimed that this issue was one of coverage and therefore was itself arbitrable; see *Gaudet* v. *Safeco Ins. Co.*, 219 Conn. 391, 593 A.2d 1362 (1991); he consented to a hearing in Superior Court to resolve this threshold issue.

"The court takes particular note of defendant's exhibit 1 which reads as follows: 'I, John D. Stevens withdraw all claims against the following policy holders, and their insurance company: John and Dorothy Stevens, Mary and Ronald Stevens. I also acknowledge that I was not a member of my father's household at the time of my accident, and did not have a Connecticut driver's license at that time.'

"The court concludes that the plaintiff's residence was not at the home of his parents.

James D. O'Connor, Judge

"The above written Memorandum of Decision was typed from the decision of Judge O'Connor made in script prior to his death but not reduced to the usual typewritten form.

"Based on the decision of Judge O'Connor that John D. Stevens was not a resident of his father's household, he therefore, does not have standing under the father's insurance policy to demand arbitration under that policy.

"The application for arbitration is denied.

/s/ _____
Arnold W. Aronson, Judge"

On November 27, 1991, the plaintiff filed a motion to set aside the judgment and for a new trial. In that motion, the plaintiff argued, inter alia, that Judge O'Connor's handwritten decision "is not a proper basis for the Court's ruling on the Application to Proceed With Arbitration . . . [because] there is no way of determining that this was a final decision [of Judge O'Connor] in that [he] did not cause the decision to be typed, signed, and filed with the Clerk of the Court." On December 23, 1991, after hearing argument on the

plaintiff's motion, Judge Aronson denied the motion from the bench, concluding that "[i]t did appear that this was a final decision by Judge O'Connor in his own handwriting and, for that reason, it was the decision of this court to consider that to be a final decision by Judge O'Connor and to have it reduced in a proper type-written form." The plaintiff asserted that until the decision was filed it was possible that Judge O'Connor could have changed it. Judge Aronson responded that "that always is a possibility. Whether it was a reasonable probability, it does not appear to be the case in this situation." This appeal followed.

The plaintiff argues that Judge O'Connor's handwritten decision, which was neither signed nor filed, was not a proper basis for the rendition of judgment by Judge Aronson. We agree.[2]

It is abundantly clear that Judge O'Connor never rendered judgment in this case. "A judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him." *Bogaert* v. *Zoning Board of Appeals,* 162 Conn. 532, 535, 294 A.2d 573 (1972). Where a memorandum of decision is the judgment of the court, "[t]he judgment . . . is not rendered when the judge arrives at his decision in the privacy of his chambers" but when the paper is handed to the clerk. Id., 536. Consequently, the handwritten decision by Judge O'Connor, which was neither signed by him nor filed with the clerk, could not be given the force or effect of a judgment of the court.

---

[2] The plaintiff raises five claims on appeal, one of which was abandoned at oral argument before this court. Because we conclude that the plaintiff's first argument is dispositive of this appeal, we confine our decision to a discussion of this issue alone.

This conclusion does not give preference to form over substance. Here, form and substance are inextricably intertwined. While Judge O'Connor did draft a preliminary decision, he did not sign the document, nor did he cause it to be typed or filed with the clerk. While Judge O'Connor may have intended to take those final steps toward the rendition of judgment, we cannot determine with certainty what his intention was at the time of his death. Cf. *Kasarauskas* v. *McLaughlin,* 25 Conn. Sup. 60, 61, 196 A.2d 118 (1963) ("[n]o one knows how the motion to set aside would have been decided or what was in Judge Healey's mind when he directed a verdict"). Judges, like all other human beings, sometimes change their minds after further reflection on the evidence or the legal precedents controlling the conclusions to be drawn from the evidence. "[W]hile [a decision] is still in the judge's possession, irrespective of whether it has been signed, it is at best a proposed order subject to change along with the judge's thought process . . . ." *State* v. *Dowdell,* 55 Md. App. 512, 515, 464 A.2d 1089 (1983), cert. denied, 298 Md. 310, 469 A.2d 864 (1984). While Judge Aronson may have been correct in noting that there was no reasonable probability that the handwritten decision would not have been the final decision of Judge O'Connor, we do not believe that that is a conclusion that the successor judge can or should reach. Such a conclusion is necessarily based on a degree of speculation that, no matter how small, involves too great a risk of error to be the basis of the adjudication of substantive rights.[3] Without a signed

---

[3] In this regard, we note that, in a remarkably similar case, the Supreme Court of New Hampshire aptly observed long ago: "[I]t cannot be found that he did what he did not do. Report of an oral statement of the trial judge as to the finding he proposed to make would be evidence of the same character as the written memoranda left in this case; but it would hardly be contended that a post mortem judgment could be rendered upon the statement of a trier of fact as to what he intended to find." *Labonte* v. *Lacasse,* 78 N.H. 489, 490, 102 A. 540 (1917).

decision filed with the clerk, a draft decision found among a deceased judge's papers is simply a draft decision, which unfortunately leaves the judicial proceedings incomplete. "[T]he paper upon which [the successor judge] acted was merely a tentative and potential finding. It was in the breast of the court and subject to change and modification until its public announcement in court or filing gave it force as a finding, and it therefore could not be considered as determining the cause." *Wainwright* v. *P. H. & F. M. Roots Co.,* 176 Ind. 682, 698, 97 N.E. 8 (1912).

Judge Aronson, as the successor judge in this case, had the power to complete the proceedings commenced before Judge O'Connor. General Statutes § 51-183f provides in relevant part that "if any judge of the superior court is retired because of a disability, dies or resigns during the pendency of any proceeding before him, any other judge of that court, upon application, shall have power to proceed therewith as if the subject matter had been originally brought before him." Because § 51-183f authorizes the successor judge to proceed in the matter as if it had been originally brought before the successor judge, it is incumbent on the successor judge to exercise independent judgment in completing the proceedings. In this case, it was Judge Aronson's responsibility to find the facts and apply the law to those facts. Rather than finding the facts himself, Judge Aronson relied on the inchoate findings articulated in Judge O'Connor's draft decision. Nowhere is it indicated that Judge Aronson made his own findings of fact. Just as a successor judge, "if the case comes before him regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed . . . may apply his own judgment"; *Breen* v. *Phelps,* 186 Conn. 86, 100, 439 A.2d 1066 (1982); a successor judge must

apply his own judgment to the evidence in order to determine the facts where his predecessor leaves that task incomplete by reason of death.

Having determined that the judgment of the trial court must be reversed, we must now address the appropriate scope of the remand in this case. The plaintiff urges us to remand this case for a new trial. We do not believe, however, that a new trial is required under the circumstances of this case.

Our appellate courts have not had occasion to consider the proper procedure under General Statutes § 51-183f to be followed in a trial to the court. To order a new trial here because of the death of Judge O'Connor would be tantamount to declaring a mistrial due to his death because he had not completed the trial of this case. This result, we believe, would be contrary to the provisions of General Statutes § 51-183f, which authorizes any other judge, in the event a judge dies during the pendency of a proceeding, to continue with the case as if the matter had been originally brought before the successor judge. The plain language of § 51-183f, therefore, authorizes further proceedings before another judge where the original trial judge is unable to complete proceedings due to death, disability or resignation.

In conducting these further proceedings, however, the trial court must be extremely cautious in deciding issues in a case in which it has not heard the evidence.[4] "In cases tried without a jury, the general rule is that a party litigant is entitled to a decision on the facts by a judge who heard and saw the witnesses, and a deprivation of that right is a denial of due process." *Paul-*

---

[4] Of course, this concern is not present where the parties have stipulated to a decision by the successor judge based on a review of the evidence before the original trial judge. See *Nahas* v. *Nahas,* 25 Conn. App. 595, 597 n.1, 595 A.2d 926 (1991).

*son* v. *Meinke,* 352 N.W.2d 191, 193 (N.D. 1984); *Anderson* v. *Dewey,* 82 Idaho 173, 180, 350 P.2d 734 (1960); 46 Am. Jur. 2d, Judges § 37. While this rule would appear to mandate a new trial in a case like the present one, which involves disputed issues of fact, we believe that recent amendments to rule 63 of the Federal Rules of Civil Procedure provide proper guidance to our trial courts in both carrying out the mandate of § 51-183f and ensuring that no party is deprived of its due process right to a decision by the judge who heard and saw the witnesses. Rule 63 now provides: "If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness." Rule 63 seeks to prevent unnecessary expense and delay by allowing completion of a proceeding halted by the death, disability or resignation of the original trial judge. At the same time, it recognizes the risks inherent in a successor judge's determination of the credibility of a witness not seen or heard who is available to be recalled. See Fed. R. Civ. P. 63, Advisory Committee Note of 1991.

The guidance we receive from the requirements of rule 63 in determining how our courts should proceed under § 51-183f allows us to formulate the proper procedure to assure the expeditious resolution of this case, submitted for ultimate decision over two years ago, while, at the same time, ensuring that, pursuant to the mandates of due process, "[t]he one who decides must hear." *Morgan* v. *United States,* 298 U.S. 468, 481, 56 S. Ct. 906, 80 L. Ed. 1288 (1936). Accordingly, we hold

that upon the death, disability or resignation of a judge of the Superior Court during the pendency of a trial or hearing to the court, a successor judge should take the following steps pursuant to the authority granted by § 51-183f: (1) become familiar with the entire existing record, including, but not necessarily limited to, transcripts of all testimony and all documentary evidence previously admitted; (2) determine, on the basis of such record and any further proceedings as the court deems necessary, whether the matter may be completed without prejudice to the parties; (3) if the court finds that the matter may not be completed without prejudice to the parties it should declare a mistrial, but if the court finds that the matter may be completed without prejudice to the parties then; (4) upon request of any party, or upon the court's own request, recall any witness whose testimony is material and disputed and who is available to testify without due burden; (5) take any other steps reasonably necessary to complete the proceedings; and (6) render a decision based on the successor judge's own findings of fact and conclusions of law.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.