STATE OF CONNECTICUT *v.* STANLEY JAGIELLO
(10602)

Dupont, C. J., Foti and Freedman, Js.

Argued September 21—decision released November 3, 1992

*Barbara J. Sorrentino,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, was *John Connelly,* state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the decision of the trial court denying his request, made pursuant to General Statutes (Rev. to 1985) § 17-251 (b),[1]

---

[1] In 1986, at the time the defendant committed the underlying criminal offense, General Statutes (Rev. to 1985) § 17-251 (b) provided in pertinent part: "The court, upon its own motion or at the request of the defendant or his attorney, may at any time hold a hearing to determine whether such person [committed to Whiting Forensic Institute pursuant to § 17-245] should be discharged from the institute prior to the expiration of the maximum period of his sentence. . . . If the court determines the patient should be discharged from the institute, *it shall then determine whether the patient should be released, granted parole or returned to the custody of the commissioner of correction."* (Emphasis added.) In 1989, the legislature amended the last sentence of § 17-251 (b) to provide: "If the court determines the patient should be discharged from the institute, *he shall be returned to the custody of the commissioner of correction."* (Emphasis added.) In 1991, the provisions of § 17-251 were transferred to § 17a-570.

The trial court held that, because the change created by the 1989 amendment to § 17-251 (b) was substantive, the amended statute could not be applied retroactively. The court therefore applied the version of the stat-

for sentence reduction upon his discharge from Whiting Forensic Institute (Whiting) and returning him to the custody of the commissioner of correction. The defendant claims that the trial court improperly (1) concluded that his prior plea agreement effectively waived his right to sentence reduction under § 17-251 (b), and (2) considered his prior plea agreement to have already incorporated a sentence reduction based on his mental status. Because we conclude that the trial court properly fulfilled its obligation under § 17-251 (b) to review the defendant's sentence in light of his improved mental status, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. In 1987, the defendant agreed to plead guilty to murder in violation of General Statutes § 53a-54a pursuant to the *Alford* doctrine.[2] Under the plea agreement, the state would recommend a sentence of thirty years incarceration, with the defendant reserving the right to argue for less. The trial court, *Dranginis, J.,* accepted the defendant's plea and ordered a psychiatric evaluation pursuant to General Statutes (Rev. to 1985) § 17-244 (now § 17a-566).

After taking testimony regarding the defendant's psychiatric condition, the trial court sentenced the defendant to be committed to the custody of the commissioner of correction for a period of thirty years, and, pursuant to § 17-245 (now § 17a-567), ordered him to be confined at Whiting "for custody, care and treatment, until such time as he is a fit candidate for incarceration under his sentence."

---

ute in effect at the time of the commission of the crime. Although the state did not seek permission to appeal this issue, it states in its appeal brief that "it in no way concedes that General Statutes § 17a-570 (b) could not be applied retroactively." We express no opinion on this issue as it is not before us.

[2] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

On December 20, 1990, Whiting filed a report indicating that the defendant no longer required custody, care and treatment there and recommended his discharge from Whiting. After a hearing on April 19, 1991, the trial court, *Byrne, J.,* determined, pursuant to General Statutes (Rev. to 1985) § 17-251 (b) (now § 17a-570 [b]), that the defendant should be discharged from Whiting. The case was then continued to July 24, 1991, when the court held a further hearing pursuant to § 17-251 (b) to determine "whether the defendant [upon his discharge from Whiting] should be released, granted parole or returned to the custody of the commissioner of correction . . . ."[3]

The testimony adduced at the July 24 hearing revealed that, while at Whiting, psychotherapy and pharmacological intervention had helped to change the defendant's behavior dramatically. He had participated in nearly all available rehabilitation programs at Whiting and had helped to organize a charitable fund-raising program at the facility. The defendant was calmer and more relaxed, handling stressful situations more appropriately. Aggressive outbursts, characteristic of his admitting diagnosis, had disappeared. Neurological testing that previously indicated brain dysfunction now indicated normal brain functioning. At the time of the hearing, the defendant's illness was diagnosed as being in remission.

On August 16, 1991, the trial court denied the defendant's request for sentence reduction and remanded him to the custody of the commissioner of correction to serve the remainder of the sentence imposed in 1987. In making its decision, the court indicated that it had reviewed the presentence report that was used in 1987 along with the transcript of the 1987 sentencing proceeding, the various psychiatric and psychological

---

[3] See footnote 1, supra.

reports from Whiting and the testimony of various members of the defendant's treatment team at Whiting. The court noted that there are several purposes served by incarceration: rehabilitation, punishment and prevention. The court also noted that the state's attorney had taken the defendant's mental condition into consideration in making the original sentencing recommendation and that it was the parties' understanding that the commitment to Whiting was a way of preparing the defendant to serve the sentence imposed by the court. After considering the nature of the offense, the purposes of incarceration, the thoughts of the parties at the time of sentencing, and the procedures used at Whiting that had put the defendant's illness into remission, the court indicated that it could not overlook the punishment aspect of incarceration. In denying the relief requested by the defendant, the court concluded that "although there has been the rehabilitative process commenced on behalf of the defendant, still we must take into consideration the aspects of the other parts of sentencing. . . . [T]he idea that a life has been taken . . . has to be taken into consideration."

The defendant contends that the trial court did not properly carry out its mandate under § 17-251 (b) to consider events transpiring since the original sentencing, especially the successful treatment of the defendant's mental illness. In support of this claim, the defendant points to two factors that he claims the court relied on in making its determination under § 17-251 (b). First, the defendant asserts that the trial court improperly concluded that the defendant had effectively waived his right to a sentence reduction under § 17-251 (b) because, in its view, the parties at the original hearing considered the commitment at Whiting as a way of preparing the defendant to serve the sentence imposed by the court. Second, the defendant argues that the trial court refused to consider the defendant's

improved mental health because it concluded that the state had already taken into account the defendant's mental status in its original sentencing recommendation and therefore it should not credit the defendant again for his progress at Whiting. We find insufficient support, however, for either of these conclusions ascribed to the trial court.

Under § 17-251 (b) prior to its 1989 amendment, a defendant could be considered for early release from a previously imposed sentence upon discharge from Whiting. *State* v. *Hanson,* 210 Conn. 519, 566 A.2d 1007 (1989). Whether to suspend the previously imposed sentence under § 17-251 (b) is a sentencing decision of the trial court; id., 531; and, as such, calls on the court to exercise its very broad discretion. Id.; *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986); *State* v. *McNellis,* 15 Conn. App. 416, 445, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). A sentencing decision will be reversed only for an abuse of that discretion.

Here, the trial court's remarks indicate that it carefully considered the progress made by the defendant while at Whiting. The court, however, gave determinative weight to the nature of the crime and the punishment, which, in the exercise of its discretion, it believed was necessitated by such conduct. The nature of the crime is certainly a factor that may be considered in determining the punishment to be imposed. *State* v. *Williamson,* 206 Conn. 685, 703, 539 A.2d 561 (1988); *Copeland* v. *Warden,* 26 Conn. App. 10, 13, 592 A.2d 477, cert. granted, 220 Conn. 926, 598 A.2d 365 (1991); *State* v. *McClain,* 23 Conn. App. 83, 88, 579 A.2d 564, cert. denied, 216 Conn. 822, 581 A.2d 1056 (1990). The court's remarks about the original sentencing must be read in the context of the entire § 17-251 (b) sentencing hearing. *State* v. *McNellis,* supra, 449–50. When so read, those remarks implied neither a conclusion that

the defendant had waived his rights to sentence modification nor a refusal to give weight to the defendant's improved condition. We view the challenged remarks to be, at best, tangential to the court's decision. The mere reference to extraneous or improper information at the sentencing hearing does not require the sentence to be set aside "unless the defendant shows . . . that the trial court substantially relied on the information in determining the sentence." *State* v. *Collette,* 199 Conn. 308, 321, 507 A.2d 99 (1986). We are not persuaded that the trial court placed any substantial reliance on the information challenged by the defendant.

Accordingly, we conclude that the trial court properly carried out its mandate under § 17-251 (b) to consider events transpiring since the previously imposed sentence. Not being confined solely to a consideration of those events, however, the trial court did not abuse its discretion when it determined that the defendant should be returned to the custody of the commissioner of correction to serve the unexpired portion of his sentence.

The judgment is affirmed.

In this opinion the other judges concurred.