GLENN GORELICK ET AL. *v.* EMILY
MONTANARO ET AL.

MICHAEL MONTANARO *v.* GLENN GORELICK,
TRUSTEE, ET AL.
(AC 30055)
(AC 30056)

Beach, Alvord and Pellegrino, Js.

Argued October 23, 2009—officially released March 16, 2010

*A. Reynolds Gordon*, with whom was *Frank A. DeNicola, Jr.*, for the appellant (Glenn Gorelick, named plaintiff in the first case, named defendant in the second case).

*Dennis Gorelick*, pro se, the appellant (plaintiff in the first case, defendant in the second case).

*R. Bartley Halloran*, with whom was *Kenneth J. Bartschi*, for the appellee (Michael Montanaro, defendant in the first case, named plaintiff in the second case).

*John R. Bryk*, for the appellee (Emily Montanaro, named defendant in the first case, defendant in the second case).

*Opinion*

ALVORD, J. These appeals, by Glenn Gorelick and Dennis Gorelick, are from the judgments rendered in two consolidated actions after a trial to the court. On appeal, the Gorelicks challenge various conclusions

reached by the trial court with respect to the distribution of partnership funds and the proceeds from the sale of real estate in connection with the dissolution of a family partnership. We reverse in part the judgments of the trial court.

By way of background, the first action was instituted in November, 1993, by the Gorelicks, as trustees for their minor children, against the defendants Emily Montanaro and Michael Montanaro. The original complaint subsequently was amended to include a third defendant, Wendy Montanaro.[1] The amended complaint alleged, inter alia, wrongful withholding of funds, breach of contract, and waste and mismanagement. The Gorelicks sought an accounting, money damages, specific enforcement of a partnership agreement, the appointment of a receiver of rents and a distribution of partnership funds.[2] The second action was filed in December, 2001, by Michael Montanaro against Glenn Gorelick, trustee; Dennis Gorelick, trustee; and Emily Montanaro and sought a dissolution of the partnership, Boston Avenue Properties, and a partition by sale of real estate located at 10 Boston Avenue in Bridgeport.[3]

The following facts are necessary for the resolution of the claims on appeal. These facts were set forth in a previous opinion of this court, in which we dismissed Glenn Gorelick's prior appeal because it had not been

---

[1] Wendy Montanaro temporarily owned an interest in the real estate involved in these appeals. On April 15, 1995, Emily Montanaro transferred her interest in the real estate to Wendy Montanaro. On October 18, 1996, Wendy Montanaro conveyed that interest in the real estate back to Emily Montanaro.

[2] The amended complaint also alleged unfair and deceptive trade practices, but that claim subsequently was withdrawn.

[3] After the two actions were consolidated and tried to the court, *D. Brennan, J.*, but before the court, *Doherty, J.*, issued its memorandum of decision on March 22, 2004, the court, *Doherty, J.*, ordered that the complaints be amended to reflect that the Gorelicks were prosecuting and defending the actions in their individual capacities and in their capacities as trustees.

taken from a final judgment. *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 891 A.2d 41 (2006). "In 1977, brothers Michael Montanaro and Richard Montanaro, their mother, Emily Montanaro, and their cousins, Dennis Gorelick and Glenn Gorelick, each were conveyed a one-fifth interest in a parcel of commercial property at 10 Boston Avenue by Emily Montanaro's mother, Ellen Berty.[4] At oral argument in this court [on the prior appeal], the parties agreed that Dennis Gorelick no longer had any interest in the real estate at the time the second action involved in this appeal was commenced and that Glenn Gorelick, as trustee, owns a 40 percent share of the realty, as reflected on the land records.[5] There is also no dispute among the parties that Michael Montanaro owns 20 percent and Emily Montanaro owns 40 percent of the real estate, as stated on the land records of Bridgeport. In 1979, the original five landowners formed a partnership, known as Boston Avenue Properties, to develop the property and to manage the income derived from the property. The partnership was governed by a partnership agreement.[6]

[4] "For reasons concerning creditors, Glenn Gorelick's interest was given in trust to Dennis Gorelick. The court [*Doherty, J.*] stated that Richard Montanaro transferred his interest in trust to his mother, Emily Montanaro. The deed that was recorded on the land records, however, indicates that Richard Montanaro's interest was not transferred in trust to Emily Montanaro, but was transferred in fee on March 9, 1992." *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 18 n.8.

[5] "On May 28, 1993, Dennis Gorelick transferred the share of the realty that he previously had held as trustee for Glenn Gorelick to Glenn Gorelick, trustee for Kira Gorelick, Glenn Gorelick's daughter. Subsequently, Dennis Gorelick transferred his share to Dennis Gorelick, trustee for his daughters, Elizabeth and Margaret, and subsequently . . . [Dennis Gorelick, as trustee, transferred that share] to Glenn Gorelick, trustee for Kira Gorelick." *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 18 n.9.

[6] "The partnership agreement provided that the partnership's assets consisted of each partner's interest in the subject property, although ownership of the property was not transferred to the partnership. Further, Berty was to be the managing agent for the property and was to receive all income derived from the property." *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 19 n.11.

"Problems between the partners began in the mid-1990s when Berty's health began to fail, and Emily Montanaro began to care for her and manage her financial affairs.[7] Emily Montanaro became aware that Dennis Gorelick, who, along with Glenn Gorelick, had managed Berty's affairs to that point, had been fraudulently misappropriating Berty's money. An action was filed by Emily Montanaro, as executrix of Berty's estate, in which judgment was rendered in 1996 against Dennis Gorelick for $147,712.06. Another action was filed, in March, 1998, by Emily Montanaro, as executrix, claiming that Dennis Gorelick fraudulently had conveyed assets and seeking to set aside those conveyances in order to collect the judgment she had obtained. See *Montanaro* v. *Gorelick*, 73 Conn. App. 319, 807 A.2d 1083 (2002).[8]

"The actions that are the subject of the present appeals were consolidated and tried to the court, *D. Brennan, J.,* in three days in June, 2002. The court reserved decision after conclusion of all of the evidence and ordered posttrial briefs. Judge Brennan subsequently resigned prior to rendering a judgment. The parties stipulated to allow a successor judge, *Doherty, J.,* to render judgment on the basis of the transcript, exhibits, briefs and oral argument." *Gorelick* v. *Montanaro,* supra, 94 Conn. App. 18–20.

The court, *Doherty, J.,* in a memorandum of decision filed March 22, 2004, concluded that Gorelicks failed to prove mismanagement of partnership funds. The court also concluded that the continuation of the partnership was unrealistic because of the "divisiveness, acrimony

---

[7] "The court [*Doherty, J.*], in its memorandum of decision, stated that 'there has not been a more acrimonious, less trusting or less cooperative partnership since the Axis of World War II.' " *Gorelick* v. *Montanaro,* supra, 94 Conn. App. 19 n.12.

[8] "That action failed because the statute of limitations had run." *Gorelick* v. *Montanaro,* supra, 94 Conn. App. 20 n.13.

and mistrust" among the partners. It therefore granted the request of Michael Montanaro to appoint a receiver to wind up the partnership affairs and ordered a partition sale of the Boston Avenue property. Glenn Gorelick filed an appeal from that decision, but this court dismissed it for lack of a final judgment because the trial court had not determined the individual partners' interests in the partnership and had not issued orders concerning the distribution of the accumulated partnership funds and assets. *Gorelick* v. *Montanaro*, supra, 94 Conn. 21–33.

After this court dismissed Glenn Gorelick's appeal, the court, *Doherty, J.*, issued a memorandum of decision on November 6, 2006, in which it found that the Gorelicks' attempts to convey their partnership interests to themselves as trustees for the benefit of their children were ineffective and that their interests in the partnership were held as individuals. The court further found that each of the five original members of the partnership was entitled to an equal one-fifth interest in the partnership and that each of the five original members was entitled to a one-fifth share of the net proceeds from the sale of the Boston Avenue real estate. Thereafter, on June 4, 2008, the court, *Blawie, J.*, issued a decision in which it directed the receiver to distribute the partnership funds and the proceeds from the sale of the subject real estate to the five original partners in the manner previously determined by Judge Doherty. Subsequently, the Gorelicks, individually and as trustees, filed the present appeals.

On appeal, Dennis Gorelick claims that the court improperly determined that (1) each of the five original partners held a one-fifth interest in the partnership and was entitled to one-fifth of its accumulated income, (2) he, as trustee, was not a partner and was not entitled to accumulated income in that capacity and (3) he failed to prove that the remaining partners accepted him as

a trustee partner. Glenn Gorelick has raised identical claims on his own behalf and, in addition, claims that the court improperly (1) denied his motion for a retrial with live testimony, (2) determined that each of the five original partners was entitled to a one-fifth share of the net proceeds from the sale of the Boston Avenue property, (3) determined that the accumulated income from the partnership should be distributed to the partners rather than to the record owners of the real estate and (4) failed to conclude that Emily Montanaro breached her fiduciary duties to the partners by withholding partnership income and charging excessive management fees.[9]

The Gorelicks' claims on appeal fall into three general categories involving: (1) the denial of Glenn Gorelick's motion for a retrial with live testimony; (2) the distribution of the partnership funds and the proceeds from

---

[9] At the time of oral argument before this court, Glenn Gorelick withdrew his claims that the trial court improperly (1) made a finding that he had unclean hands, (2) ordered a sale by auction rather than a private sale of the real estate, (3) ordered a sale by auction prior to a final determination of his interests in the accumulated income and real property and (4) granted the motion of Emily Montanaro and Michael Montanaro for an interim distribution of the accumulated income. By letter dated November 12, 2009, Dennis Gorelick stated that the issue of "unclean hands" had not been resolved with respect to him but that he also was withdrawing the remaining issues.

The issue of unclean hands is irrelevant. The court, *Doherty, J.*, in its March 22, 2004 memorandum of decision, denied the Gorelicks' request for an accounting in view of the *plaintiff's* unclean hands. The court did not identify which plaintiff had unclean hands. Moreover, an accounting, the court noted, would only have merit if the partnership was viable; the court concluded that it should be dissolved because its continued existence would only "perpetuate the divisiveness, acrimony and mistrust" among the partners.

In a subsequent articulation by the court, it indicated that it was referring to Dennis Gorelick as the plaintiff with unclean hands because of the judgment previously rendered against him for the fraudulent misappropriation of Berty's funds. Although Dennis Gorelick disagrees with that judgment, it was part of the evidence presented at trial. In any event, the trial court's finding of unclean hands with respect to the request for an accounting is not relevant to any of the issues that we are addressing on appeal.

the sale of the real estate; and (3) the alleged breach of fiduciary duties by Emily Montanaro. We will address each of these categories in turn after first dismissing in part the appeal filed by Dennis Gorelick.

Dennis Gorelick is a self-represented party. He filed his present appeal in his individual capacity and as a trustee. Dennis Gorelick is not a lawyer. "Any person who is not an attorney is prohibited from practicing law, except that any person may practice law, or plead in any court of this state in his own cause. General Statutes § 51-88 (d) (2). The authorization to appear pro se is limited to representing one's own cause, and *does not permit individuals to appear pro se in a representative capacity*." (Emphasis in original; internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 756, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004).

As the trustee of a trust created for the benefit of his daughters, Dennis Gorelick is not representing his "own cause." His pro se appearance on behalf of the trustee constitutes the unauthorized practice of law in violation of § 51-88. Dennis Gorelick, as a nonlawyer, does not have authority to maintain an appeal on behalf of the trust. Accordingly, we dismiss his appeal with respect to his claims presented on behalf of the trust. See *Ellis* v. *Cohen*, 118 Conn. App. 211, 214–16, 982 A.2d 1130 (2009). We now turn to the Gorelicks' remaining claims.

I

Glenn Gorelick claims that the court, *Doherty, J.*, should have granted the motion for a retrial that he filed after this court's decision in *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 14. Referring to a footnote in that decision, he claims that the court improperly decided the matter without live testimony.[10]

---

[10] The subject footnote provides in part: "Because we lack subject matter jurisdiction, we are without the power to resolve the question of whether

After Judge Brennan resigned following the three day trial to the court, all parties signed a stipulation dated December 23, 2002. At a status conference held on the record on March 14, 2003, attorney A. Reynolds Gordon, representing Glenn Gorelick, informed Judge Doherty that a stipulation had been filed with the court authorizing the retrial of the case on the basis of the trial transcripts, exhibits, briefs and oral argument by the parties. The parties assured Judge Doherty that the matter had been extensively and well-briefed, that they did not want a trial de novo and that, given the lengthy litigation, it was in everyone's best interest to have the matter resolved as quickly as possible. After hearing the parties' comments, Judge Doherty raised a concern that a reviewing court might conclude that it was improper for him to decide the matter on the basis of recorded testimony and previously submitted exhibits. In response, Gordon directed the court's attention to paragraph six of the stipulation, which specifically provides that "[t]he parties stipulate to the foregoing provisions and waive any appeal relating to this Court's authority to decide the cases based upon the trial transcript, exhibits, briefs and oral argument."[11]

stipulations of the parties can, as a matter of law, circumvent the procedures required by [General Statutes] § 51-183f, as provided in *Stevens* [v. *Hartford Accident & Indemnity Co.*, 29 Conn. App. 378, 615 A.2d 507 (1992)], when the case hinges on questions of credibility." *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 22 n.14.

[11] Two months later, at the time of oral argument before Judge Doherty on the two consolidated actions, the court again referred to the parties' stipulation. After summarizing its provisions, Judge Doherty stated: "And I'm going to have the benefit of those transcripts, which is an awkward way to hear a case; but among other things, that's been expressly provided, there would be no appeal from this court's authority to decide the matters without the usual benefit of having the witnesses testify before me." At the conclusion of the parties' closing arguments, Judge Doherty stated: "I want to make sure it's clear on the record that this court's being asked to review the evidence and testimony that was offered before Judge Brennan without the benefit of having the witnesses appear before it, and there's a stipulated agreement that that would not be the basis of an appeal, per se, that alone."

After Glenn Gorelick appealed from the March 22, 2004 decision and that appeal was dismissed by this court for lack of a final judgment, he filed a motion with the trial court dated March 22, 2006, requesting a hearing to address the issue of whether Judge Doherty should have disapproved the parties' stipulation. Two days later, by motion dated March 24, 2006, Glenn Gorelick supplemented his prior motion by requesting that the two actions be retried de novo with live testimony. A hearing was held on July 10, 2006, at which time the attorney for Emily Montanaro, in opposing that motion, represented that his client was then eighty-seven years old, in failing health and unable to testify or to come to court.

On November 6, 2006, Judge Doherty issued his memorandum of decision, denying Glenn Gorelick's motion for a retrial with live testimony. The court concluded that it had decided the cases in conformity with General Statutes § 51-183f[12] and expressly stated that it had taken into consideration the six steps set forth in *Stevens* v. *Hartford Accident & Indemnity Co.*, 29 Conn. App. 378, 615 A.2d 507 (1992), when it decided to accept the parties' written stipulation.[13]

---

[12] General Statutes § 51-183f provides: "If the term of office of any judge of the Superior Court expires during the pendency of any proceeding before him, or if any judge of the Superior Court is retired because of a disability, dies or resigns during the pendency of any proceeding before him, any other judge of that court, upon application, shall have power to proceed therewith as if the subject matter had been originally brought before him."

[13] In *Stevens*, this court held that "upon the death, disability or resignation of a judge of the Superior Court during the pendency of a trial or hearing to the court, a successor judge should take the following steps pursuant to the authority granted by § 51-183f: (1) become familiar with the entire existing record, including, but not necessarily limited to, transcripts of all testimony and all documentary evidence previously admitted; (2) determine, on the basis of such record and any further proceedings as the court deems necessary, whether the matter may be completed without prejudice to the parties; (3) if the court finds that the matter may not be completed without prejudice to the parties it should declare a mistrial, but if the court finds that the matter may be completed without prejudice to the parties then; (4) upon request of any party, or upon the court's own request, recall any witness

We conclude that this claim of Glenn Gorelick is without merit. Judge Doherty represented that he considered the requisite criteria set forth in *Stevens*, and there is nothing in the record that would lead us to a contrary conclusion. Moreover, under the circumstances of this case, we cannot conclude that the parties were unable to waive the opportunity to retry the two actions with live testimony. Although Glenn Gorelick now contends that his due process rights are implicated, even constitutional rights may be waived. "As a general rule, both statutory and constitutional rights and privileges may be waived." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 57, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009).

Further, as evidenced by the record, particularly the assurances of counsel to Judge Doherty, the claimed error was clearly induced.[14] "[A] party cannot take a path at trial and change tactics on appeal." *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 501, 918 A.2d 921 (2007). "This court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the

whose testimony is material and disputed and who is available to testify without due burden; (5) take any other steps reasonably necessary to complete the proceedings; and (6) render a decision based on the successor judge's own findings of fact and conclusions of law." *Stevens* v. *Hartford Accident & Indemnity Co.*, supra, 29 Conn. App. 386.

[14] "An induced error, or invited error, is an error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . By comparison, a waiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice." (Citation omitted; internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 482 n.18, 915 A.2d 872 (2007).

erroneous ruling. . . .[15] It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests on the principles of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Snowdon* v. *Grillo*, 114 Conn. App. 131, 139, 968 A.2d 984 (2009).

Because Glenn Gorelick signed a stipulation, orally requested the court to decide the cases on the basis of the trial transcripts, exhibits, briefs and oral argument and, through his counsel, assured Judge Doherty that the parties wanted to proceed in this fashion, he cannot now claim that the court should not have decided the matter without live testimony and that it improperly denied his motion for a retrial.

## II

We now address the parties' claims with respect to the distribution of partnership funds and the proceeds from the sale of the commercial real estate located at 10 Boston Avenue in Bridgeport. The court determined that each of the five original partners, Glenn Gorelick, Dennis Gorelick, Michael Montanaro, Emily Montanaro and Richard Montanaro, was entitled to 20 percent of the accumulated income from the partnership, less expenses, and 20 percent of the net proceeds from the sale of the real estate.

We first note that all of the parties agree that Richard Montanaro is not entitled to any distribution of funds from partnership assets, either accumulated income from the partnership or proceeds from the sale of the

---

[15] "The doctrine also has been applied in appeals in which appellants challenged the trial court's application of legal principles or procedures that they requested be applied at trial." *State* v. *Maskiell*, 100 Conn. App. 507, 515, 918 A.2d 293, cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007).

real estate. It is undisputed that Richard Montanaro had validly conveyed his interest in both the real estate and the partnership to his mother, Emily Montanaro, in March, 1992.[16] None of the parties ever claimed that either transfer violated the terms of the partnership agreement. *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 30–31. The parties confirmed this fact at the time of oral argument before this court. Accordingly, the court's judgment with respect to Richard Montanaro is reversed. We now look to the court's determination with respect to the interests held by the remaining partners.

A

Accumulated Income From Partnership

The partnership agreement, dated and signed on July 31, 1979, indicates that Glenn Gorelick, Dennis Gorelick, Michael Montanaro, Emily Montanaro and Richard Montanaro were forming a partnership known as Boston Avenue Properties. The agreement specifically provides that they recently had acquired commercial property located at 10 Boston Avenue and that they had determined "to become co-partners in a business of ownership and development" of that real estate. The agreement further provides that each partner is "equally liable for all obligations, costs and expenses resulting from the purchase, maintenance, development and ultimate disposition" of that real estate and that each partner "shall have [an] equal interest and shall share in all of the aforementioned real estate and all of the net profits and net losses of the partnership, including any depreciation deductions for federal or state tax purposes."

---

[16] Section 4 (d) of the partnership agreement provides: "Any co-partner may receive the interest of any other co-partner by gift or otherwise, in which event the receiving co-partner shall have added shares and proportionate voting powers."

The partnership agreement expressly restricts the transfer of partnership interests, unless the transfer is made by one partner to another partner.[17] Section four of the agreement provides: "No partner shall during his lifetime, assign, encumber or otherwise dispose of his interest or any part thereof in the partnership, except as provided below . . . (c) . . . [A]ny co-partner may be entitled to transfer by gift or otherwise his or her share to said partner's parent, child or grandchild (not to spouse), in which event, said successor shall thereupon be an equal co-partner and possess the same status, right and liabilities as possessed by the co-partners herein set forth. *Such change in partner and in the status of the partnership shall take effect immediately upon receipt of notice of divestment by [the] partner and acceptance [of] the new partner by all of the remaining partners* . . . ." (Emphasis added.)

Pursuant to § 4 (d) of the partnership agreement, when Richard Montanaro conveyed his interest in the partnership to Emily Montanaro in 1992, Emily Montanaro then held a 40 percent interest in the partnership, and the remaining three partners each held a 20 percent interest. Thereafter, in 1993, the Gorelicks, individually and as trustees, gave notice to Emily Montanaro and Michael Montanaro of their intent to transfer their partnership interests to themselves as trustees for the benefit of their children. In 1996, Dennis Gorelick gave notice to Emily Montanaro and Michael Montanaro that he would be transferring his interest as trustee to Glenn Gorelick, trustee for Kira Gorelick. Accordingly, at the time of trial, it was the position of Glenn Gorelick and Dennis Gorelick that Glenn Gorelick, as trustee for Kira Gorelick, held 40 percent of the partnership interest, Emily Montanaro held 40 percent of the partnership interest and Michael Montanaro held 20 percent of the partnership interest.

---

[17] See footnote 16 of this opinion.

The court, *Doherty, J.*, in its March 22, 2004 decision, found that the transfers of the partnership shares by Glenn Gorelick and Dennis Gorelick in 1993 and 1996 were in contravention of the terms of the partnership agreement. Section 4 (c) requires notice of divestment by the transferring partner *and* acceptance of the new partner by all of the remaining partners. The court found that "[w]hile there was some evidence of the intention of [Glenn Gorelick and Dennis Gorelick] to divest themselves by conveying to trustees . . . there was no record of acceptance [of] the new partner by all of the remaining partners." (Citation omitted.)

Further, the court, *Doherty, J.*, in its November 6, 2006 decision, made the following finding: "The court finds, based on the evidence and testimony, that neither Glenn Gorelick nor Dennis Gorelick held an interest in the partnership as trustees. The purported conveyances to each of them in that capacity did not conform to the terms of the partnership agreement. They were not accepted by all of the other partners in the capacity of trustees. . . . The court . . . finds that, according to the partnership agreement, each is a partner in his individual capacity." Finally, in its articulation filed July 14, 2009, the court, *Doherty, J.*, found "neither the issuance or acceptance of [K-1 tax forms], nor any other conduct, constituted acceptance 'by behavior or otherwise' on the part of the remaining parties as required by [section 4 (c)] of the written partnership agreement."

Glenn Gorelick and Dennis Gorelick challenge the factual findings of the court, claiming that the behavior of the remaining partners clearly indicated that they accepted Glenn Gorelick and Dennis Gorelick as partners in their capacities as trustees. The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

We cannot conclude that the court's findings were clearly erroneous. Although Glenn Gorelick and Dennis Gorelick refer to certain conduct of Emily Montanaro and Michael Montanaro as being evidence of such acceptance, none of the referenced behavior constitutes acceptance as a matter of law, and the court was free to conclude otherwise. The court, in its decision, indicated that it determined that there had been no acceptance on the basis of "the evidence and testimony . . . ." The court did not specify what evidence and testimony led to that determination, and neither Glenn Gorelick nor Dennis Gorelick requested an articulation addressed to that aspect of the decision. During oral argument, there was some speculation that the court may have concluded that such an acceptance had to be in writing but, again, the record is inadequate to review the claim on that basis.[18]

It is clear that there was no written acceptance of Glenn Gorelick and Dennis Gorelick as trustees by the remaining partners. It is also clear that the partners were experiencing some interpersonal difficulties among themselves, as evidenced by the first action instituted by Glenn Gorelick and Dennis Gorelick against Emily Montanaro and Micheal Montanaro in November, 1993, in which Wendy Montanaro was later cited in as a defendant. The first transfer by Glenn Gorelick and Dennis Gorelick to themselves as trustees occurred sometime after May, 1993. The second transfer by Dennis Gorelick, as trustee, to Glenn Gorelick, as trustee,

---

[18] It is the appellants' responsibility to provide an adequate record for review. See Practice Book § 60-5.

was in 1996. The relationship among the partners clearly had deteriorated by that point in time. The court reasonably could have concluded that, given the hostility that existed, there was no acceptance.[19]

We conclude that Richard Montanaro is no longer a partner of Boston Avenue Properties by virtue of the transfer of his interest in the partnership and the real estate to Emily Montanaro in 1992. As determined by the trial court, the purported transfers by Glenn Gorelick and Dennis Gorelick to themselves as trustees in 1993 and 1996 were contrary to the terms of the partnership agreement and were, therefore, ineffective. Glenn Gorelick and Dennis Gorelick continue to hold their partnership interests as individuals. Accordingly, the partnership funds, less expenses, are to be distributed in accordance with the partnership interests held by the current partners, i.e., 20 percent to Glenn Gorelick, 20 percent to Dennis Gorelick, 20 percent to Michael Montanaro and 40 percent to Emily Montanaro.

B

Net Proceeds From Sale of Real Estate

Glenn Gorelick next claims that the court improperly determined that each of the five original partners was entitled to share equally in the net proceeds from the sale of the commercial property at 10 Boston Avenue. He argues that the proceeds should be distributed to the record holders of the real estate as reflected in the

---

[19] The argument by Glenn Gorelick and Dennis Gorelick that Michael Montanaro and Emily Montanaro are estopped from claiming that Glenn Gorelick and Dennis Gorelick, as trustees, are entitled to distributions of partnership funds because of judicial admissions made by Michael Montanaro and Emily Montanaro is without merit. For a judicial admission to be binding, it must be "clear, deliberate and unequivocal." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, 103 Conn. App. 79, 85, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). The judicial admissions that Glenn Gorelick and Dennis Gorelick claim are binding in this case do not meet that standard.

Bridgeport land records. It is undisputed that the land records indicate that Glenn Gorelick, as trustee, owns a 40 percent share of the realty, Emily Montanaro owns a 40 percent share of the realty and Michael Montanaro owns a 20 percent share of the realty.

As previously noted, the real estate was conveyed to Emily Montanaro, Michael Montanaro, Richard Montanaro, Dennis Gorelick and Dennis Gorelick, trustee for Glenn Gorelick in 1977. The partnership was formed after the acquisition of the property. In 1979, the parties signed the partnership agreement for Boston Avenue Properties. Although it is clear from the agreement itself that the primary purpose for the partnership's existence was the development of 10 Boston Avenue, title to the realty was not transferred to the partnership. The individual partners remained the record owners of the real estate.

Nevertheless, the partnership agreement and the subsequent actions of the partners treated the real estate as an asset of the partnership. The July 31, 1979 agreement states that the parties were partners "in a business of *ownership* and development" of the real estate, that the parties are equally liable for costs and expenses resulting from "the *purchase*, maintenance, development and *ultimate disposition of that real estate*," that the parties "shall have [an] equal interest and shall share in all of the aforementioned real estate" and that no partner can assign or otherwise dispose of his or her "interest or any part thereof in the partnership" except as otherwise provided in the agreement. (Emphasis added.) Furthermore, the management agreement, also dated and signed July 31, 1979, in which Berty was designated the managing agent of the property, expressly states that "the *partnership* [previously identified as Boston Avenue Properties] *owns* and operates certain rental properties located at *10 Boston Avenue*" in Bridgeport. (Emphasis added.)

The tenant of the real estate, Town Fair Tire Center of North Avenue, Inc., subsequently Town Fair Tire Centers, Inc., leased the property from Boston Avenue Properties. That lease was amended from time to time, and the third amendment to that lease, dated November 16, 1992, also identified the lessor as Boston Avenue Properties, a general partnership consisting of Glenn Gorelick, Dennis Gorelick, Emily Montanaro and Michael Montanaro.

At the time the partnership was formed in 1979, Connecticut's Uniform Partnership Act, General Statutes §§ 34-39 through 34-81, was in effect, having been adopted by the General Assembly in 1961. Public Acts 1961, No. 158. The revised Uniform Partnership Act, General Statutes §§ 34-300 through 34-399; see Public Acts 1995, No. 95-341 (P.A. 95-341); became effective July 1, 1997. Section 34-399 provides: "Sections 34-300 to 34-399, inclusive, do not affect an action or proceeding commenced or right accrued before July 1, 1997."[20]

Under Connecticut's prior and current Uniform Partnership Act, partnership realty is considered personalty with respect to any individual partner's rights therein. *Wheeler* v. *Polasek*, 21 Conn. App. 32, 34, 571 A.2d 129 (1990); General Statutes § 34-347; Rev. Unif. Partnership Act of 1997, § 502, comment, 6 U.L.A., Pt. 1, p. 156 (2001) ("[t]he partner's transferable interest is deemed to be personal property, regardless of the nature of the underlying partnership assets").

Even though the realty was not held in the name of the partnership, it nevertheless may have been a partnership asset. Whether real estate held in the names of individual partners is a partnership asset is a question of fact. See *Mathews* v. *Wosek*, 44 Mich. App. 706, 714–

---

[20] As previously noted, the first action was instituted by Glenn Gorelick and Dennis Gorelick in November, 1993. The second action was filed by Michael Montanaro in December, 2001.

15, 205 N.W.2d 813 (1973). Under the act in effect prior to 1997, "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property." General Statutes § 34-46 (1) (repealed by P.A. 95-341, § 57). Under the current act, as under the prior act, it is the intent of the partners that determines whether property is partnership property. See General Statutes § 34-316; Rev. Unif. Partnership Act of 1997, supra, § 204, comment (3), 6 U.L.A., Pt. 1, p. 98 ("Ultimately, it is the intention of the partners that controls whether property belongs to the partnership or to one or more of the partners in their individual capacities, at least as among the partners themselves. [The Revised Uniform Partnership Act] sets forth two rebuttable presumptions that apply when the partners have failed to express their intent.").

We cannot discern from the court's opinion whether it concluded that the real estate was partnership property, subject to distribution in accordance with the partnership interests, or whether the court concluded that the real estate had been conveyed in contravention of the partnership agreement. As previously noted, § 4 of the agreement specifically provides that a partner cannot "assign . . . or otherwise dispose of his interest or any part thereof in the partnership" except as provided in the agreement. Section 4 (c) recognizes a transfer to a partner's child only upon notice of divestment and acceptance of the new partner by all of the remaining partners. The court concluded that the remaining partners had not accepted Glenn Gorelick and Dennis Gorelick as trustees. It is possible that the court deemed those transfers of the real estate to be contrary to the terms of the partnership agreement and therefore ineffective.

The court's November 6, 2006 memorandum of decision simply states: "As previously ordered, a receiver

shall be appointed for the express purpose of winding down the business of [Boston Avenue Properties] and for the distribution to the partners of their respective one-fifth (1/5) shares of the net proceeds of the sale of the commercial real property." The court does not indicate its underlying reasons or rationale for distributing the proceeds by partnership interest rather than by record title. Glenn Gorelick did not request an articulation. It is the appellant's burden to furnish this court with an adequate record to review his claim on appeal. See Practice Book § 60-5. The record is inadequate for review of this claim.

Glenn Gorelick has failed to demonstrate that the court's determination was improper, except for its order with respect to Richard Montanaro. As previously discussed in part II A of this opinion, Richard Montanaro is no longer a partner of Boston Avenue Properties by virtue of the transfer of his interest in the partnership and the real estate to Emily Montanaro in 1992. Accordingly, the net proceeds from the sale of the commercial real estate are to be distributed as follows: 20 percent to Glenn Gorelick, 20 percent to Dennis Gorelick, 20 percent to Michael Montanaro and 40 percent to Emily Montanaro.

### III

The final claim of Glenn Gorelick is that the court improperly failed to conclude that Emily Montanaro breached her fiduciary duties to the partners by withholding partnership income and charging excessive management fees. Specifically, he argues that the court "erroneously placed the burden of proof" on him and Dennis Gorelick and failed to recognize Emily Montanaro's "fiduciary obligations and the self-dealing nature of her activities."

Although the court recognized that Emily Montanaro owed a fiduciary duty to each of the partners to the

extent that she assumed the role of managing agent of the commercial property, the court concluded that Glenn Gorelick and Dennis Gorelick failed to demonstrate that she improperly withheld funds or that she mismanaged the property. In reaching that determination, the court noted: "The record and exhibits show that over the years in question there were numerous attempts by all the partners to reach an agreement as to the appropriate way to distribute the accumulated funds of the partnership, but no consensus could be reached which would authorize or compel Emily Montanaro to make such disbursement. One of the obvious impediments to any such agreement was the pendency of the lawsuit commenced by Glenn Gorelick and Dennis Gorelick. That impasse summed up and illustrated the total lack of cooperation required to permit the partnership to survive and function." With respect to her management fees, the court found that they were not illegal or improper under the partnership agreement, common law or statutory law.

On appeal, Glenn Gorelick emphasizes that a fiduciary must prove fair dealing by clear and convincing evidence. He also claims that the court improperly placed the burden of proof on the Gorelicks to demonstrate that the actions of Emily Montanaro were unreasonable. "Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. Once a fiduciary relationship is found to exist, the burden of proving fair dealing shifts to the fiduciary. Furthermore, the standard of proof for establishing fair dealing is not the ordinary fair preponderance of the evidence standard. The fiduciary is required to prove fair dealing by clear and convincing evidence." *Stuart* v. *Stuart*, 112 Conn. App. 160, 171 n.5, 962 A.2d 842, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 237 (2009).

It is clear from the court's opinion, however, that it assessed the evidence and found *no* wrongdoing on the

part of Emily Montanaro. Having failed to meet that threshold, it is questionable as to whether those claims ever reached the point where the burden shifted to the fiduciary. See id., 187. To the extent that the court determined that the burden did shift, we conclude that the court applied the proper standard of proof. "When a trial court in a civil matter requiring proof by clear and convincing evidence fails to state what standard of proof it has applied, a reviewing court will presume that the correct standard was used." *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 130–31, 981 A.2d 1068 (2009).

Having concluded that the court used the proper standard of proof, we now determine whether its factual findings were clearly erroneous. There is evidence in the record, both testimonial and documentary, that supports the court's findings. We therefore cannot conclude that the court's findings were clearly erroneous.

The appeal in AC 30055 is dismissed with respect to the claims by Dennis Gorelick on behalf of Dennis Gorelick as trustee; in AC 30055 and AC 30056, the judgments are reversed only as to the award to Richard Montanaro of partnership funds and proceeds from the sale of the commercial real estate and the cases are remanded for further proceedings according to law. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.